[No. 8120.]

## BIVENS v. HULL ET AL.

1. SPECIFIC PERFORMANCE—*Contract of Stockholders in Corporation for Increase of Stock.* Two directors of a corporation, owning the majority of the stock outstanding, agreed with a broker that its stock should be increased, that a proportion of the increase should be awarded to one of the directors, without anything to be paid therefor, and another proportion should be awarded to the broker in consideration of his procuring the sale of other shares, so as to produce a specified sum. Bill by the broker against the contracting directors, for specific performance. *Held* that inasmuch as to specifically enforce the contract would involve the coercion of the corporation to do what it had never agreed to do, and might be unwilling to do the relief must be denied. (341, 342)

2. PARTIES—*Necessary Defendants.* A contract of directors of a corporation contemplating and requiring a corporate action cannot be enforced in an action to which the corporation is not party. (343)

3. CORPORATIONS—*Treasury Stock.* Stock held by a corporation for sale, unsubscribed, is not treasury stock. (342)

4. ——*Issue of Stock for Services*, if authorized by the Constitution and statutes, is permitted only where the services rendered are equal in value to the stock. (343)

5. CONTRACT—*Illegal.* A contract by stockholders of a corporation, who are also directors, with a broker, that the stock of the corporation shall be increased, that one of the directors shall receive a portion of the increase without paying therefor, and that for certain services to be rendered by the broker he shall receive an excessive reward in stock is vicious. (342)

6. INJUNCTION—*Preliminary—Emergency.* Two judges of the district court had passed upon the alleged emergency upon which a preliminary injunction was awarded. On appeal the court declined to review their action. (344)

*Error to Routt District Court.*—Hon. JOHN T. SHUMATE, Judge.

Mr. JOHN H. GABRIEL, Mr. J. K. BOZARD, for plaintiff in error.

Mr. WELLS B. McCLELLAND, Mr. C. R. MONSON, for defendants in error.

CHIEF JUSTICE MUSSER delivered the opinion of the court:

The action below was for the specific performance of a contract and an injunction. A general demurrer to the amended complaint was sustained and the action dismissed. The amended complaint alleged that the plaintiff in error, who was plaintiff below, entered into a contract with the defendants in error, who were defendants below, wherein it was recited that the defendants were the owners of a majority of the stock of the Hull Telephone Improvement Company; that they desired Bivens, the plaintiff, to raise money to finance the company, and that Bivens had agreed to raise at least $5,000 by sale of treasury stock, at not less than fifteen cents a share; that in consideration of this promise the defendants agreed,—as stated in the words of the contract,—"to cause a meeting of the stockholders of said company to be called and held for the purpose of increasing the capital stock of said company from the sum of $50,000 to the sum of $250,000, and increase the directors of said company from three to seven; and further agreed that the capital stock of said company shall be held as follows: 140,000 shares as treasury stock, and the balance, 110,000 shares, promotion stock, of which 110,000 shares 30,000 is outstanding, and the balance to be distributed as follows: 50,000 shares to C. E. Bivens on his fulfilling his part of this agreement, the other 30,000 shares to Horace Hull and his associates. In consideration of which the said C. E. Bivens agrees to raise the sum of at least $5,000 to finance said company, by selling treasury stock of said company for not less than 15 cents a share, on the sale of which and

delivery of the sum of $5,000 to said company, said C. E. Bivens is to receive 50,000 shares of said promotion stock, and the other 30,000 shares of promotion stock to be delivered to said Horace Hull and his associates.''

The amended complaint further alleges that at the time of the execution of the contract the capital stock of the company was $50,000, divided into shares of the par value of one dollar each; that of this, 30,000 shares were issued and outstanding, of which the defendants owned 22,500 shares and had a proxy for 5,000 shares more; that defendants were two of the three directors of the corporation; that pursuant to the contract a meeting of the stockholders was called and held for the purpose of increasing the capital stock from $50,000 to $250,000, and to increase the number of directors from three to seven; that at the meeting the defendants voted all the stock owned and controlled by them as aforesaid against the increase of the capital stock, and advised all the other stockholders to vote against it, so that such proposed increase was defeated; that at that stockholders' meeting, the defendants voted to increase the number of directors from three to seven, and the increase of directors was made; that the plaintiff, relying upon the said contract and in full confidence that the defendants would at the stockholders' meeting vote to increase the capital stock, proceeded to raise the sum of $5,000 as provided in the contract, and entered into a contract of sale and sold to certain parties 33,333 shares of the capital stock of the company at fifteen cents a share, for the full sum of $5,000; that this stock so sold was the stock provided by the contract with the defendants to be sold; that the purchasers of the said stock have demanded the same of the plaintiff, and threaten to bring suit against him to compel its delivery; that before the commencement of the action plaintiff tendered to the defendant for the

company the $5,000 named in the contract to be raised, and demanded that the defendants carry out that contract and cause to be issued to the purchasers the 33,333 shares of the capital stock of the company and that the defendants failed and refused to do this. Then follow further allegations on matters, the existing of which were necessary to compel a specific performance of a contract for the sale of stock, and also matters necessary to obtain an injunction. The prayer was for a temporary injunction restraining the defendants from transferring any of the stock which they held, and that upon a final hearing the defendants be ordered to specifically perform the contract and to cause a meeting of the stockholders to be held to increase the capital stock as provided therein, and upon the holding of the stockholders' meeting the defendants be ordered to do everything necessary to increase the capital stock, and upon the increase to issue to the plaintiff 50,000 shares of the stock, and to issue to the purchasers the stock which the plaintiff sold to them.

The defendants insist that all they contracted to do was to cause a stockholders' meeting to be called and held for certain purposes; that such meeting was called and held, and therefore the defendants fulfilled their contract. Be this as it may, there are various reasons why a court of equity should give no further countenance to the contract, among which the following are sufficient: The original issue and disposition of its capital stock are acts to be performed by a corporation. It was proposed in the contract to issue and dispose of stock that was not, and could not become, the property of either plaintiff or defendants, until it was issued and disposed of by the corporation in the manner provided by law. In order to give the relief sought for by plaintiff it would be necessary to coerce the corporation not only to in-

crease its capital stock, but to issue and dispose of it in accordance with a contract with which it had nothing to do, and in an action to which it was not a party. Furthermore, the unissued capital stock of a corporation belongs to it. It forms its capital at its par value and the corporation, only, has the right to dispose of it, and that in accordance with law. This contract proposed to dispose of the capital stock of the corporation. $140,000 worth of it was to be treasury stock. Treasury stock has a meaning different from what was meant thereby in this contract. It is evident that what was termed treasury stock in the contract was stock to be held by the corporation as unsubscribed for and unissued. Bivens was to sell enough of this so-called treasury stock at fifteen cents a share to produce $5,000. It is plain that this stock to be sold by Bivens was to be carved out of the original issue and the corporation was to originally issue and part with $33,333 worth for $5,000. That is all it was ever to have, or could expect to obtain, and that is what the plaintiff wants a court of equity to say that the corporation shall take for it, whether it wants to or not, because three individuals have contracted that it shall do so. $110,000 worth of the stock was to be promotion stock, whatever that may be. Of this, $30,000 worth was already issued and outstanding, and the remaining $80,000 worth was to form a melon, which was to be cut up so that Hull and his associates were to get $30,000 worth and Bivens $50,000 worth.

So far as it appears from the contract, the corporation was to receive nothing whatever for the 30,000 shares of stock that was to go to Hull and his associates. There is no law to warrant any such disposition of the capital stock of a corporation. $50,000 worth of the stock was to go to Bivens. It may be urged here that the services of Bivens in selling stock so that the corpo-

ration would get $5,000 would be a consideration for the issuance of the $50,000 worth to Bivens. It may be true that our constitution and statutes authorize the issuance of stock for services rendered to a corporation. If that is so, it is coupled with the idea that the services rendered shall be of the value of the stock issued therefor. It is also true in this connection that the authorities, when good faith is present, give to the value of the property or services for which stock is issued an elastic quality, but there is no authority that stretches such value to the extent of authorizing the payment of $50,000 of the original capital stock for services rendered in procuring $5,000 in money for the corporation. By this contract, then, this corporation was to part with $113,000 worth of its capital stock, and all that it was to receive therefor was $5,000. The value of $5,000 is fixed. There is no prospect of its ever being worth any more. Its purchasing power may increase or diminish, but its value always remains at $5,000. Without intimating that such a contract, if made by a corporation, would be enforceable, because that question is not now before us, it is certain that the corporation cannot be made to perform such a contract when it did not make it, in a suit to which it is not a party.

The defendants in error have assigned cross-error. A temporary restraining order was issued without notice, pending the application for a temporary injunction, restraining the defendants from transferring stock held by them. At the hearing, a temporary injunction was denied, and a demurrer was sustained to the complaint and the suit dismissed. The defendants claim that the court erred in not entering judgment on the emergency bond given when the temporary restraining order was granted. The matter of the emergency that existed for the issuance of the temporary restraining order seems

to have been passed upon by two district judges adversely to the contention of defendants in error. Under such circumstances, we do not feel justified in interfering with their disposition of the matter, but will leave the parties with their unwarranted contract where the District Court left them.

The judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE GABBERT and Mr. JUSTICE HILL concur.